*"Amended Complaint"(All) Allegations are being filed into this Single Document" via Order granted by the Judge:*

Revised 03/06 WDNY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**FORM TO BE USED IN FILING A CIVIL COMPLAINT IN FEDERAL COURT**
(Non-Prisoner Context)

All material filed in this Court is now available via the **INTERNET**. See **Pro Se Privacy Notice** for further information.

### 1. CAPTION OF ACTION

1:11-CV-79

**A.     Full Name of Plaintiff:  NOTE**: *If more than one plaintiff files this action and seeks in forma pauperis status, must submit an in forma pauperis application or the only plaintiff to be considered will be the plaintiff who file*

ORIGINAL
RECEIVED AND FILED
UNITED STATES DISTRICT COURT CLERK
WESTERN DISTRICT OF NEW YORK
JAN 18 2012
BY:

Bertha A. Johnson
Title: Correction Officer

-vs-

**B.     Full Name(s) of Defendant(s) NOTE:** *Pursuant to Fed.R.Civ.P. 10(a), the names of all parties must appear in the caption. The court may not consider a claim against anyone not identified in this section as a defendant.*  Add a separate sheet, if necessary.

1. NYS Department of Corrections *Docs* *& Community* Supervision
2. Sgt. Elsenheimer
3. Lt. Wojinski
4. Captain Dale Scalise
5. Deputy Amoia
6. Diversity Management

### 2. STATEMENT OF JURISDICTION, VENUE and NATURE OF SUIT
*All of these sections MUST be answered*

*Identify the basis for federal Court jurisdiction over your claim, such as that the United States government is a party to the action, all the parties reside in different states and therefore you claim diversity jurisdiction, or the claim presents a federal question or arises under federal law.*

A. Basis of Jurisdiction in Federal Court: Discrimination Claim under Civil Rights & (Federal Question)-My Case touches on federal Laws & the Constitution (See attached Pg)

*State why the Western District of New York is the proper venue for this action, such as that your claim arises in or the defendant resides in the 17 westernmost counties of New York State.*

B. Reason for Venue in the Western District: Myself and (All) defendants to this Action are United States Citizens, and also Resides in the 17 Westernmost (see attached Pg)

*Identify the nature of this action, such as that it is a civil rights claim, a personal injury or personal property (tort) claim, a property rights claim, or whatever it is.*

C. Nature of Suit: Civil Rights Claim: Title III of the Civil Rights of 1964, (Title VII), which Prohibits Employment Discrimination based on (See attached Page)

*Amended Complaint* All (5) Claims as Directed by Law Judge:

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

CONTINUED FROM PAGE ONE,...

1. **CAPTION OF ACTION**
-vs-

B.   FULL NAME(s) OF DEFENDANT(s)

1. Sqt. Pyra Michael          8. Doss

2. Lt. Rizzo                  9. _____

3. Deputy Flanagan            10. _____

4. Superintendent Powers      11. _____

5. Deborah Nazon DM

6. Mike Washington = Diversity Management

7. Labor Relations

*Continued*

*" Amended Complaint "   All Claims added*

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

### 2. STATEMENT OF JURISDICTION, VENUE and NATURE OF SUIT

CONTINUED,

A. Basis of jurisdiction in Federal Court: which Federal question can be found. U.S. Courts has jurisdiction over discrimination claims. Federal laws protect the rights against racial discrimination by employers. Also, my claims raise a Federal question, has merit, facts, and legal theory.

B. Reason for Venue in the Western District: counties of New York State. I reside in Buffalo New York, of (Erie County) and have any plans to leave the country; my employment as a Correction Officer is the Albion Correctional Facility, located in Albion New York (Orleans County) and is also, where (all) the defendants are employed. (NYS Department of Correctional Services and Community Supervision-their new name). The acts of the unlawful violations by certain members of administration did take place at the Albion Correctional Facility, in Orleans County. The locations stated are within the judicial district of this court.

*Bertha [signature]*

*11/18/2012*

## 3. PARTIES TO THIS ACTION

**PLAINTIFF'S INFORMATION  NOTE:** *To list additional plaintiffs, use this format on another sheet of paper.*

Name of First Plaintiff: Bertha A. Johnson (African American Female)

Present Address: 1560 Jefferson Avenue Buffalo, New York 14208

Name of Second Plaintiff: _____

Present Address: _____

**DEFENDANT'S INFORMATION  NOTE:** *To list additional defendants, use this format on another sheet of paper.*

Name of First Defendant: Sgt. Michael Pyra

Official Position of Defendant (if relevant): "

Address of Defendant: Work Place: Albion Correctional Facility 3595 State School Rd. 14411

Name of Second Defendant: Lt. Wojinski

Official Position of Defendant (if relevant): Lieutenant

Address of Defendant: Work Place of incident: Albion Correctional Facility 3595 State School Rd. 14411

Name of Third Defendant: Dale Scalise

Official Position of Defendant (if relevant): Captain

Address of Defendant: Work Place: Albion Correctional Facility 3595 State School Rd 14411

## 4. PREVIOUS LAWSUITS IN STATE AND FEDERAL COURT

A.     Have you begun any other lawsuits in **state or federal court** dealing with **the same facts involved in this action?**
Yes ✓   No ___   FMLA, Case with DHR dismissed (Prime Facie) by Judge 2009 - 2010, Case was Not handled Properly - misrepresented by Merits

If Yes, complete the next section. NOTE: *If you have brought more than one lawsuit dealing with the same facts as this action, use this format to describe the other action(s) on another sheet of paper.*

1.     Name(s) of the parties to this other lawsuit:

Plaintiff(s): Bertha A. Johnson

2

all Defendants Name additional

Mike Washington From Diversity Management

Defendant(s): DOCS, Supervisors at Albion Correctional Facility Deputy Flanagan, Captain Dale Scalise, Lt. Rizzo, Sgt Pyra

2. Court (if federal court, name the district; if state court, name the county): DHR, Division of Human Rights, Erie County

3. Docket or Index Number: Case # 10130630 1st case Filed

4. Name of Judge to whom case was assigned: Spencer D. Phillips

5. The approximate date the action was filed: Approx January 2009

6. What was the disposition of the case?

Is it still pending? Yes____ No ✓

If not, give the approximate date it was resolved. August 19, 2010 Rochester, New York

Disposition (check those statements which apply):

____ Dismissed (check the statement which indicates why it was dismissed):

    ____ By court *sua sponte* as frivolous, malicious or for failing to state a claim upon which relief can be granted;

    ____ By court for failure to prosecute, pay filing fee or otherwise respond to a court order;

    ____ By court due to your voluntary withdrawal of claim;

____ Judgment upon motion or after trial entered for

    ____ plaintiff

    ✓ defendant.

---

## 5. STATEMENT OF CLAIM

**Please note** that it is not enough to just list the ground(s) for your action. You **must** include a statement of the facts which you believe support each of your claims. In other words, just tell the story of what happened and do not use legal jargon.

**Fed.R.Civ.P. 8(a)** states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "The function of pleadings under the Federal Rules is to give fair notice of the claim asserted. Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial." Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995).

**Fed.R.Civ.P. 10(b)** states that "[a]ll averments of claim ... shall be made in numbered paragraphs, the contents of each of which shall be limited as far a practicable to a single set of circumstances."

---

**A. FIRST CLAIM:** On (*date of the incident*) February 2008-FMLA, 1st Filed Case W-DHR

defendant (*give the name and (if relevant) the position held of each defendant involved in this incident*) Approx 112009

FMLA:

answer begins on next pg. #4

Because I Understand that Courts are Not Mind Readers (or) Required to conjure up Questions. I must Reveal that...

(See attached Page

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK


CONTINUED,...

DEFENDANT'S INFORMATION

Name of Fourth Defendant:  NYS Department of Corrections and Community Supervision
(DOCS), and New York State, Department of Civil Services, NYS, Office of the State
Comptroller, Necessary Parties

Official Position of Defendant:  State government agency of the Correctional Services
(DOCS)

Address of Defendant:  The Harriman State Campus-Bldg.2, 1220 Washington Avenue,
Albany, N.Y. 12226-2050


Name of Fifth Defendant:  Sandra Amoia

Official Position of Defendant:  Deputy

Address of Defendant:  Albion Correctional Facility, 3595 State School Rd. Albion N.Y.
14411


Name of Sixth Defendant:  M. Powers

Official Position of Defendant:  Superintendent

Address of Defendant:  Albion Correctional Facility, 3595 State school Rd. Albion N.Y.
14411


Name of Seventh Defendant:  Elsenheimer

Official Position of Defendant:  Sgt.

Address of Defendant:  Albion Correctional Facility, 3595 State School Rd. Albion N.Y.
14411


Name of Eighth Defendant:  Mike Washington

Official Position of Defendant:  Investigator for Diversity Management
Address of Defendant:

CONTINUED,...

Name of Ninth Defendant:  Deborah Nazon (Diversity Management)

Official Position of Defendant:  Acting Director of Corrections and community Supervision

Address of Defendant:  NYS Department of Corrections and Community Supervision, 1221 Washington Avenue, Bldg.2, Albany, N.Y. 1226-2050

Name of Tenth Defendant:  Rizzo

Official Position of Defendant:  Lt.

Address of Defendant:  Albion correctional Facility, 3595 State School Rd. Albion N.Y. 14411

Name of Eleventh Defendant:  Flanagan

Official Position of Defendant:  Deputy, now at a different Facility

Address of Defendant:  Unknown at this time:  transferred from Albion

2, Continued

General Allegations Applicable to All Claims

did the following to me (*briefly state what each defendant named above did*): 1. On information and belief, I was approved and qualified for Family and Medical Leave Act for my condition/disability of anxiety on June 19, 2007. The approval is ultimately suppose to be issued by our Planning Lt. John Rizzo, but because proper forum is not conducted at Albion my letter of qualified FMLA was sent by personnel, Sandra Fort. (Con't) 2. My FMLA, was on an intermittent basis (See attached)

The federal basis for this claim is: (See attached Page) Interference, 2617(a)(i) FMLA Violations 29 U.S.C. 2615(a)(i) — Negligence-Liability

State briefly **exactly** what you want the Court to do for you. *Make no legal arguments and cite no cases or statutes:*
The acts, omissions, conduct, and behavior of defendants caused me (the Plaintiff) to suffer damages including, but not limited to: inconvenience, Interfered with Job & Disability, Forcing "See attached me to work with anxiety, embarrassment, Stress from developing Bells Palsy Page" Emotional Pains — Physical Harm suffering

**B. SECOND CLAIM:** On (*date of the incident*) October/November 2008 "See attached Page"

defendant (*give the name and (if relevant) position held of each defendant involved in this incident*) Sgt. Pyra, Deputy Flanagan, Dale Scalise (Captain) → Right after B.J.

did the following to me (*briefly state what each defendant named above did*): Right after the NOD (Notice of Discipline against my FMLA, was Dismissed in October 2008. I Bertha Johnson Received (another) NOD only Two weeks later. This time the improper, unwarranted, wrongful NOD was over Time Cards that the Time Keeper Notified to Deputy Flanagan & Dale Scalise (Captain) that (She) the Time keeper Shandah did not have certain time cards →

The federal basis for this claim is: _____

State briefly **exactly** what you want the Court to do for you. *Make no legal arguments and cite no cases or statutes:* See attached Under B'

**If you have additional claims, use the above format to set them out on additional sheets of paper.**

4

## 5. STATEMENT OF CLAIM

➤ There (is) and (has) been an extensive history "Pattern" of Harassment by a Sgt. Pyra for most of my career, as early as 1998. The incidents surrounding the many **complex** incidents' I am mentioning and making this inference known to the court now to be **(able)** to have my attorney address' all of its activity in the up-coming proceedings of this court, as I was advised by the Judge that my statements are to be short' and I cannot go into detail of Eleven years. The (elements) involving the particulars will hopefully be brought forth at trial. But the matter was (extremely necessary) for outside court proceedings of mediation that had to be perused by me approximately in 2002. There is (Discovery) of failure to supervise by (his) supervisors and the Superintendent. And I endured a (Hate Crime) against my (race) with Disgusting, Vulgar, Disrespecting, Racial Slurs on my time cards in 2007.

### GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

### A. FIRST CLAIM:
➤ Continued incident date & answer of 2/2008, and what each defendant named did:

➤ 2.  Meaning that (my anxiety) cannot be predicted as to when I would have an attack. My anxiety causes my breathing to become rapid and makes me jittery, ex; as if I have drank a gallon of coffee. It was discovered through counseling and after teaching me how to (breath) during an attack, that my anxiety slowly developed' over the years from having severe car accidents that I did experience through out my career of driving an hour to work from Buffalo, to Albion over the last twenty-two years.

➤ 3.  After I was qualified in 2007, all that was given to me was my approval letter stating the procedures in what I am to do upon calling off, and that I was being provided up to 12 weeks of unpaid, job-protected leave to care for my serious health condition of anxiety that enables me to perform my job upon having an anxiety attack. Also, there (is) no postings of FMLA, section 109 (29 U.S.C. 2619) this is a requirement of FMLA policy.

➤ 4.    Before I was (qualified) for FMLA there were at least ¾ complaint letters of harassment that was submitted to Diversity Management in April, May, and June, because I started to have problems with (higher management) members of administration besides just the one Sgt. Pyra, that was taken to out-side court. As an important' note and inference here: the (fact) that I had taken a Sgt. to mediation court for (his) out of control harassment activity against me (an African-American-female), this for some members of administration was (ever quite forgotten). Especially his friend Captain scalise and Lt. Wojinski.

➤ 5.    I followed proper procedure of my qualified FMLA from 2007 and up through 2008. In February, March, and April, I called off from my shift of the 11-7 tour with FMLA-sick. The chart Sergeants that receive the sick calls by officers are required to complete a form #1202. (Discovery). This process was done and (did) state FMLA on the 1202 forms for the days I called off, along with the possible date of returning.

➤ 6.    The Sergeant accepted my FMLA sick calls and so I thought everything was ok, but weeks later I learned by my supervisor Sgt. Manhke and being served a paper of an informal stating that I had more (sick) occasions than I should have. One of the dates was an FMLA date and I wrote on the informal under, comment, and circled the date, that it was FMLA and I should not be charged an occasion. More weeks past and I was then given a formal by the third week of March 2008, with a total of 12-13 occasions that was being counted against my Time & Attendance record. This became a major problem.

➤ 7.    Very concerned as to (why) my FMLA-sick days was being charged as regular sick I began to call the planning Lieutenant John Rizzo. He was not really of any help to me and only verified that my FMLA was not' being accepted and that I would have to write a letter to Deputy Flanagan, which I did do approximately on March 18, 2008. (Discovery). I requested help in the matter and did not understand what was going on or (why) I was not (ever) told that my FMLA was not being accepted. This incident became even (worst) and I was "Disciplined" for calling off on my FMLA, and denied the ability to change' the days from (sick0 to FMLA status was denied this right upon asking for this in my letter to Deputy Flanagan. I was given an NOD (Notice of Discipline) in April 2008 by higher Management. My Doctor notes that I submitted stating FMLA, was also, (not accepted) by the planning Lt. Rizzo.

## CAUSES OF ACTION

### Count 1:  FMLA- Rights & Interference, Section 2615(a)(1)/FMLA-Anti-Discrimination 29 U.S.C. 2615(a)(2),...Negligence, Disability Discrimination(ADA) 1990

**Federal basis for this claim from page 4-A**

➢ 8.    Plaintiff hereby incorporates by reference paragraphs 1 through 7 as if fully set forth.

➢ 9.    NYS Department of Corrections, (DOCS) through its employers of various defendants (named) was aware of my protected activity, as it (was) approved 2007. Defendants willfully began to interfere with my FMLA, and denied me the use of it in 2008.

➢ 10.   There was not (any) accommodations or help awarded to me upon my request by letter to Lieutenant Rizzo, Captain Scalise, and Deputy Flanagan.  I asked several times that my FMLA sick days be accepted for February and March, but Deputy Flanagan denied my request and I was charged an occasions (separately) for each day I was out.  This (caused) me to be on Time & Attendance of being well over my allowed sick days for the year.  This was (their) purpose to begin with.

➢ 11.   Despite that my employer was negligent and allowed weeks to pass with out notifying me that the days I used as FMLA, sick ; my employer continued to interfere with my FMLA by not allowing me to use my vacation days to cover the days that was suppose to be charged on my FMLA.  Defendants reasons for declining my request for help or relief was based on interference' as evidenced by a letter stating, that they were not going to remove the occasions and I could not use vacation days.

➢ 12.   Under FMLA, I am not to be charged an occasion for using FMLA, but I was.  Although, I had called off sick due to my disability well within the time frame allowed of my tour duty I was (also) further discriminated against my disability, and was given **AWOLS.**  Even though I was not absent with out Leave.  I notified my employer by calling into the Sgt. every time and a 1202 form was complete to show this fact, so (how) can I get AWOLS, against my FMLA.

➢ 13.   I was denied a lawful right under FMLA and there is a casual connection that I had FMLA, but was given discipline against it and occasions that caused me to be on time abuse. Even if I was not protected by FMLA, and generated regular sick time I would still be able to use and request to use my vacation time.  This opportunity was not allotted to me.  The taking and use of my FMLA protected leave constituted a (negative) factor in the

defendant's decision making on (all) levels. The mere exercise of my rights to FMLA was violated over and over again. Prima facie (is) only one element and there was Adverse Employment Action that occurred, that (is) Substantial" and detriment" and (did) cause me **Harm, as** my FMLA was not accepted for the days that I had anxiety attacks and could not work. I was put on time abuse, given wrongful **awols,** and a NOD (Notice of Discipline). Defendants non-discriminatory reasons cited and to DHR, are False, and not legitimate or significant. Also, the defendants cannot **offer'** or show that another correction Officer went through the harassment or treatment that (I) Bertha Johnson suffered/endured.

### What I want the court to do from page 4-A

> 14.    The acts and omissions of Defendants were willful, wanton, intentional, negligent, and un-called for, and could have been prevented by a **non-vengeful, non-**retaliatory **Administration,** that showed disregard of Plaintiff's (my) rights, and were performed knowingly, by reason of which Plaintiff is entitled to an award of (all) attorney's fees and expenses, as provided by 42 U.S.C 1988, and compensatory damages, and punitive damages in an amount to be proved at trial.

**NOTICE TO THE COURT:**
Regarding **my first complaint and when I decided to finally start to stand' up for myself and my rights; my FMLA, case was filed with DHR, #10130630. And (already heard). That case was not held properly and I'm seeking to be properly heard in this forum, as the FMLA case with DHR was based mostly on unsettled disputes that was not ever resolved, and the legal elements, merits, and the facts, of what really happened was (not raised) between the parties. Mostly my attorney and there was procedural defects; because in the manner of Direct' evidence, that shows interference' is all that is needed, also, intent, also, >>>that (I) was entitled to FMLA leave>>>that some adverse action by the employer interfered with the employees right to take FMLA leave>>>that the employer's action was related to the exercise or attempted exercise of the employees FMLA rights. Due to my experience with this matter and not having the (proper) attorney to represent me (the client) I decided to file my paper work of my (own) civil suit pro se in this forum, with the guided help of my family, my best friend Doctor Colehoover M.D. also, at the Albion Correctional facility, and particular ministers, as some days I am unable to function and they are diligent with (helping) me, and found a prestigious lawyer that is waiting to take my case against the malicious, angry, unlawful, extensive events that I've endured. Thank you.**

*Bertha A. Johnson*

**B. SECOND CLAIM:**

(Date of incident)   October/November 2008 (Time Cards) Second NOD

## GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

Defendant did the following to me:              (Facts)

1. The time keeper at Albion (Shandah) gave a list of the time cards she was claiming that she did not have from me.  The dates of cards that she was asking for were (ten) months old.  It was October 2008 and she had one of dates of the missing time cards as being for December 2007 and up and into July and August of 2008.

2. Deputy Flanagan sent letters to two other African American officers along with myself, that time cards were missing from tens months.  Deputy Flanagan had the other two officers HanesWorth and Blakely letters put in their mail box, but had a Sgt. Pyra hand deliver my letter to me.  The Sgt. that I've had the problems with for the past Eleven years called me off my post on October 21, 2009 at approximately 4a.m. to go up to the chart office to receive this letter notice of missing time cards. The Sgt. could have given me the letter at line-up roll call, but he waited so he could call me in the middle of the night, in the cold and so I could walk to go get the letter. This (is) and (was) the nature of the eleven years I make mention of to the Court.

3. Officers (do not) have their own time cards.  The cards are dropped in an un-locked box after punching in, then taken out the box by various different officers and taken to the Sgt. of that shift/tour.  In this case my time cards were being (handled) by Sgt. Pyra, that has literally harassed me for half of my career.

4. I read the letter and stated to Sgt. Pyra that I did not have any time cards that old" in my possession FROM 10, 9, 8, 7, months ago and all time cards was put in the (time card box), and that officers do not see our time cards once we punch in.  The Sgt. (is already aware) of this process, and told me that I can write a letter of rebuttal to Deputy Flanagan, whom the letter was addressed.

5. *There were a total of 4-four letters written about this matter of time cards to Captain Wiley, the time keeper, and Deputy Flanagan notifying them that I did not have any time cards from ten months ago. (Discovery) upon trial.  My letters were "ignored.  I figured the matter was not an issue any more.

6. The (other) three officers also of ethnic race; they also, did not have any time cards to turn in within the two period of the Deputy's letter on October 21, 2008, as well. It was now November and I was receiving another improper, unwarranted, wrongful, NOD, only two weeks after DOCS had dismissed their FMLA NOD against me I was getting another one.

7. I called Deputy Flanagan approx: November 2008, and very unease and stressed Again' of another NOD against me (Only) two weeks after the first NOD, against my FMLA had just been dismissed, but hung over my head for six months. Deputy Flanagan had no care or concern about my letters I sent to him and I made a statement to the Deputy and asked: how am I suppose to turn in time cards that I do not have. He stated and asked, me if any supervisor Sgt. Pyra, had guided me that, "if I did not have time cards I had to get (blank) cards and fill them in from ten months ago. He told me that Sgt. Pyra should have or a Union member should have guided me on what to do. But it was (his) letter and the letter (was not) Clear, as to what to do about the missing cards and I did not know that I could get blank cards and fill them out for that long ago, as time cards are legal documents. I asked the Deputy why I was getting another NOD when I have done anything wrong; and why he had not answered back to any of my correspondence to him; he stated that he wasn't for sure if he had received them and did not get to it yet." I asked him to remove the NOD against me, due to his own statements that (his) letter was (not clear) and that I answered his letters. It was not removed.

8. The two officers NOD's only asked for 30-day suspension, but **my NOD was asking for Dismissal of Service** over time cards that were 10, 9, 8, 7, months **old,** and not Anything' had been said about (missing) time cards the (Entire year of 2008)! Until October. *The other two officers NOD's were resolved and dismissed within weeks, while (I) Bertha Johnson endured full Arbitration that was not until late 2009. The NOD was dismissed, but the Fact' and Problem (is) I should not have (ever) received the NOD in the first place.

9. *Policy and procedure of 2202 clearly state that it is the responsibility of the Time keeper to ensure all time cards are turn in on A Monday of the pay period. And that the Supervisors, shall also, be "Disciplined." This policy did not (ever) happen nor enforced by DOCS/Albion. And only the three African-American Officers were given NOD's.

10. Once I was told to do so by my phone conversation with Deputy Flanagan in November 2008. Although, if Deputy Flanagan would have stated this to me in his letter, this would not have happened.

11. In my arbitration hearing in 2009 one of the officers Hanesworth, that had also, received the NOD. She was a witness and gave testimony that it was revealed to her that the matter of the missing Time cards (did not) have any direct relation to her or officer Blakely, but they had to be implemented to be able to get to me because they were after me." And had to implement other officers so it would not show or stand-out to be obvious,' and that I could not claim that it was discrimination because we were all of the same ethnic race; also, that I was being made a Target for my job termination. Also, this officer wrote a single letter to Deputy Flanagan; the (same) letter similar as I wrote to Deputy Flanagan, and the Deputy sent her a letter back of (his) response 2-3 days later, but I wrote a total of three' letters to Deputy Flanagan (Discovery) to be presented; and the Deputy did not (ever) respond back to (any of my) correspondence to him that I did not have any of the cards.

## CAUSES OF ACTION
### -Elements-

**Employment Discrimination,...Retaliation,...Title VII of civil Rights Act of 1964,...The Civil Rights act of 1990,...Intentional Employment Discrimination),...Harassment,...Negligence**

Federal basis for this claim:

12. Plaintiff hereby incorporates by reference paragraphs 1 through 11 as if fully set forth.

13. (Retaliation) DOCS/Albion no matter what continued to give me improper, unwarranted, unlawful, NOD's with out (any) direct communication to (resolve) these issues with asserting any other alternatives, but through the Continuous NOD's against me, due to my complaints to U.S. Department of Labor. The NOD should have been dismissed along with the other two officers, but it was not.

14. (Discrimination) Discipline according to DOCS (own) Contract policy Security Services Unit 2003-2007. Disciplinary shall be imposed only for just cause. Also, discipline should be necessary, real, and true. Discipline should not be used in a

negative manner or due to filed complaints by the Plaintiff for discrimination of their employment- under DOCS Contract: Bill of Rights (E)

15.    (Disability Discrimination)  Albion/DOCS, was aware of my disability-anxiety and had previously interfered with my qualified FMLA.  Negligence:  Deputy Flanagan was negligent when he was not clear as to what I was suppose to do about time cards that was (ten) months old.  (Intent)  Deputy Flanagan allowed the NOD to still remain against me while knowing' that I had not done anything to receive an NOD, but allowed the NOD's of the other two (black-female) officers to be dismissed (Disparate Treatment), (Harassment) did not respond to any of my correspondence.

16.    (Civil Rights)   Ignoring my correspondence letters while in fact responding to another officer's, even though she is also, a (black-female) officer, this conduct by Albion, directly show that I am being abused and DOCS/Albion are coming after me and this was only the beginning of the events by my employer to make me a target. My rights to be treated fairly was violated.

17.    The Caucasian-Female time keeper and the Caucasian-male Supervisors of the 11-7 shift, *Sgt. Pyra who was the Sgt. that (is) responsible for turning in Officers time cards to (Time Keeper), there was not' Any Reprisal taken against either of them for the missing cards.  An NOD was not given to either employee, (ONLY) to three (black-female) officers.  This is Discrimination/Disparate treatment.

18.    Plaintiff was further injured by defendants conduct by issuing another NOD against me while, not giving the same to white employee's (time keeper) or white supervisors Sgt. Pyra.  (Employment Discrimination)

19.    The acts and omissions of Defendants were willful, wanton, and treated more harshly by administration and Punished (more), and showed disregard of Plaintiff's

rights, while knowing that I had not done anything wrong, and in fact, responded back to his correspondence, the defendants actions were knowingly, intentional, by reason of which Plaintiff is entitled to an award of punitive damages in an amount to be proved at trial.

20.    The acts, omissions, conduct, and behavior of Defendant caused Plaintiff to suffer damages including, but not limited to:  inconvenience,  hardship of continued unnecessary disciplinary against me, hardship of arbitration even though I had not done anything wrong,  hardship of being falsely accused and set-up, heighten Stress level do to the abusive nature by which I am constantly being treated and came after, making it difficult for me to focus and work freely without worry and stress, and emotional pain and suffering.

What I want the court to do:

WHEREFORE, Plaintiff requests that the court, after a trial by jury of my claims, enter judgment against Defendant for my actual damages, nominal damages and punitive or exemplary damages as are proven at trial, for costs herein, and for any such further legal and injunctive relief as the court deems appropriate.

## C. THIRD CLAIM:

On (date of incident)  March 31, 2009   NOD' (Notice of Discipline #3)
Administrative of Convenience submitted for this claim to be filed

(Defendant name and position held that were involved in incident)

Captain Dale Scalise, Lt. Wojinski, Deputy Amoia, Superintendent Powers, Sgt.
Mahnke/McAllister, Deputy Flanagan, Sgt. Stanson, Diversity Management

What each defendant did to me:

### GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

Federal basis of claim:

1.  When I filed my first complaint in January 2009, with (DHR) Division of Human
    Rights for defendants violations and interference of my FMLA.  Two months later I
    was given **another NOD** for being in my unit store room on March 31, 2009, L-1
    dorm.  I received the NOD in April 2009.  I was not ever spoken to or ever given
    (any) verbal, informal counseling for having done anything wrong, and I did not
    know or understand what I was getting another NOD for, which was my third Notice
    of Discipline.  I was out of work in April 2009, due to me passing out on the floor of
    my unit K-1 on April 11, 2009 from all of the stressful conduct' against my FMLA in
    2008, developing Bells Palsy in my face, being hospitalized in October 2008, and
    having a nervous break down in December 2008.  Also, for the courts
    understanding April 11, 2009 was also one of the many days the defendants decided
    to pick to harass Bertha Johnson and I was harassed all night, by Sgt. Stanson, Sgt
    Pyra, under the direction of their supervisor Lt. Malanowski. (Discovery).  The
    NOD's did not (ever stop) against me once I filed my complaint with (DHR) on
    January 1, 2009.  The behavior by certain members of administration was
    consistently being done through "premeditation, set up activity" that was always
    being plotted as to (how) they were going to give me another NOD to try and take
    my job.

2.  Mostly all of the officers at Albion have been going in our store rooms for years, since I transferred to Albion in 1990, as we are on the units for eight hours straight with out any breaks or lunch time. But out of hundreds of other officers, once again: I was the only Officer to receive a NOD (Notice of Discipline) and also, I was the only Officer that Captain Dale Scalise had me watched on camera of my unit L-1 for my entire eight hour tour, and had a civilian Mr. Vanderlaan pull video tapes to generate their Notice of Discipline against me, that was asking for my Dismissal of Service again,' despite the fact' that my job was still done; with my rounds being made every hour as required and Logged, all my counts were conducted and called into the Watch Commander and Logged, and my unit was quiet with out any activity of any inmate. And More importantly, there is **(No) Policy.**

3.  The cameras have strict policies of their use, and it is a restricted area to a limited amount of only authorized personnel; and there is a log book that (MUST) be complete as to the reasons why anyone is in that area, along with forms that also, (MUST) be filled out. The tapes (are not) suppose to be pulled unless there is a claim by an inmate for suspicion of sexual contact by an officer or for fights/assaults.

4.  *On approx: February 20, 2009, only **one month** before I was given my third NOD; a (Caucasian-male) officer on dorm-block J-2, of 11-7 shift, was **(sleep)** for a master 3am count. And there was activity on **his unit** and an inmate was **assaulted** in the inmate bath-room. (Discovery). The inmate requested the **camera** video be pulled, and DOCS/Albion's administration saw that the officer was sleep/unresponsive for (his) count and to the activity of fighting. The officer (did not) get a NOD **against DOCS' (Own) written Policy of the Employee's manual 7.2.** The "Caucasian-male" officer (only) received a **formal counseling,** and there **(is)** Policy" against sleeping. The entire 11-7 shift was furious' because **(we)** had to suffer because of what he had done and Captain Wiley came out with a memo for 11-7 shift, that our

night lamps had to remain on (all) night and check counts had to now' be called in every hour. (Discovery)

5. *On approx: July 23, 2009 only **four months** after I received my third NOD for being in my unit store room, which there is again, (NO) Policy.  An Officer Sweeney of the 7-3 shift was working his bid job of the sally-port and was sent a relief and given permission by a Sgt. to go to his car to use his personal' cell phone; while (this) is not proper procedure, as officers are suppose to use the phone in the Sgt. office for emergencies only, but the Officer left and went to his vehicle.  But got in his car and (drove) up the road to Orleans Correctional Facility, showed his badge posing as one of their officers; once inside he began yelling out to his civilian girl-friend becoming more angry and violent in his tone and started using the B'-word and much more. Officer Sweeney started flipping over papers off of the other civilian desk and also, resulted in ripping a time clock off the wall.  Captain Scalise and Deputy Amoia went to Orleans and brought officer Sweeney back to Albion and the cover-ups began to protect this officer and (he) was back to work in two weeks, as anything had happened, but for purposes of (clear) understanding of my file I was suspended for (TEN) months over a Library Pass, which will be implemented next in my Fourth claim.

6. *I filed a second complaint against Albion/DOCS conduct  with DHR-case#10134994, Federal Charge No. 16GA904921 on July 24, 2009 with regard to the third NOD of the store room, and I was **awarded "Probable Cause"** that the respondent has engaged in Unlawful' activity against me.  The case **(was)** investigated by Mr. Kalim Muttalib in February 2010, and through-out his investigation Mr. Muttalib asked DOCS/Albion, numerous questions such as, was there any other officers that work at Albion besides, Bertha Johnson' and (Why) does (Only) Bertha Johnson's name keep coming up, also (why) was (only) Bertha Johnson being watched on camera and the (Only) officer getting bombarded with NOD's at Albion.?  Defendants stated to the investigator that I was being watched

because an **inmate** complained to them that I was not at my post. Mr. Muttalib told DOCS/defendants that he would need that evidence of the inmate complaint' for the file to substantiate their reason for watching me on camera, and especially as there was not anything that took place on my unit by there (own) admission. No letter was (ever) submitted to the investigator because DOCS/Albion was lying to a **State'** Government official and giving False' information to protect & cover their unlawful acts against me. In the investigator's findings of Fact' the defendants/DOCS are **(admitting)** that they were targeting me." (Discovery). This case did not go any further as I wanted it filed in federal Court and an Administrative of Convenience' was granted and the case is with this Court. Administrative of Convenience letter already submitted to Court.

7. Even more critical, is that Albion/DOCS has totally avoided an arbitration hearing on this matter, due to letters that have surfaced that defendants claim are written by inmates. *No letters was submitted to the investigator from DHR' upon his request to do so in 2010, but now a year and a half later letters have surfaced saying all kinds of things about (me) regarding the store room. I had not ever seen the letters before. The letters in question supposedly written by inmates, the inmate (names) are blackened out with black marker, but my attorney and I will (need) the names of the inmates that wrote the letters to contact them for my case. Grievances and Diversity Management was sought for help and notified about everything my employer was doing to me, but no one did anything to ever help me. The union direct Correction Officers to send their complaints to Diversity Management, but they also, defend Albion.

**CAUSES OF ACTION**
-Elements-
(The Federal basis of this claim)

**Discrimination/Retaliation,...Title VII,... (ADA),...Civil Rights Act of 1964,... (ADA),...Harassment,...Fraud,...Misrepresentation,...Breach of duty(tort),... Negligence**

8.    Plaintiff hereby incorporates by reference paragraphs 1 through 7 as if fully set forth.

9.    (Title VII-Discrimination)  Defendant, conduct and their decisions to continuously give me NOD's are motivated by retaliation/discrimination and to dissuade me from participating in my active case against Albion/DOCS.  While the (white) male Officers will receive only' informal or formal counseling for their severe infractions (I) was receiving NOD's, even though I had not committed anything to warrant all of their NOD's against me.  I belong to a protected class and an African-American (female) Correction Officer.

10.    (Retaliation)  The constant set-up, wrongful, Notice of Disciplines was an Adverse Employment Action taken because I engaged in protected activity from participating in employment discrimination proceeding of an Active case of my FMLA with DHR filed January 1, 2009 and I was receiving (another) NOD only three months later.

11.    (Intentional Infliction of Emotional Distress)  DOCS, through its employers at Albion served me three improper, wrongful, unwarranted NOD's that were motivated by discrimination and retaliation.

12.    I was not ever asked or any one from administration ever afforded me my rights to be informed of any act that I had done anything wrong, to receive another NOD in which defendants were giving me another NOD.  Discriminatory animus is not vague here, its clear that the (white-officers), as stated in the circumstance of acts committed, were treated better and served **(much less)** disciplinary sanctions upon

them, and for committing more Severe acts that clearly are against DOCS policy. DOCS/Albion's administration use of their Power has been over extended' into doing "What ever they want to me and their Unprofessional' conduct of thinking "its ok" to lie to a Government official at DHR." And (did) make (False) claims to Mr. Muttalib, as by evidenced documents of his investigation that DOCS/Albion, was told to submit any letter to substantiate their claim for pulling video tapes against me to give me an NOD.

13.    (Adverse)  The action/conduct taking by defendants are unwelcomed and the constant NOD's that were given (is) an Adverse Employment Action, as the NOD's are unjustified and created to try to intimidate me and to keep me from writing complaints and exposing their activity to DHR, and was the reason for (increased) surveillance of (Only) Bertha Johnson and I was watched.  Reasonable employees found Alblion/DOCS, actions to also be severe and abusive and have dissuaded and made them fearful to make or support a discrimination charge (Hostile Work Environment)

14.    (Adverse Employment Action)  All of the actions being taken against me (did) so affect my "terms and conditions" of my employment, as it is not (normal) to continue to receive Notice of Disciplines on an every few months basis. 1/9/89, culminated in a tangible employment action that (is) and (was) pervasive' and severe' because my Albion is after my job and the NOD's continued to ask for my Dismissal of Service, and did so create and cause a hostile work environment.

15.    (Breach of Contract)(tort)  Duty of Care>Standard of Care>Duty to Rescue:  no one tried to help me or resolve the actions conducted against me and several notifying complaints were ignored and no investigation by Diversity Management.

16.    (Fraud)  intentional deception made for (personal gain) and to damage' another individual; to forge documents with the intent' to deceive, imitating, by way of

trickery that is, knowing and willful misrepresentation; to fool another into thinking, that what (is) being (presented) is actually a fact, when in Fact, it's a Lie. Fraud is a Crime, and also a Civil Law Violation.

17.   The acts and omissions of Defendants were willful, wanton, malicious, and unjust, and continued retaliation, showed disregard to (me) the Plaintiff's rights, and was excessive, and harsh, not necessary or warranted, as to being in my unit store room which is NO Policy, by reason of which Plaintiff is entitled to an award of punitive damages in an amount to be proved at trial.

18.   The acts, omissions, conduct, and behavior of Defendants caused Plaintiff to suffer damages including, but not limited to:  inconvenience, further damage of an existing physical/ emotional pain and suffering from 2008, and mental distress, that really started to take a toll on my body and my mind and I have been seeing a psychiatrist since 2009 and afforded counseling through EAP.

19.   Plaintiff is entitled to recover from original attorney's fees and expenses, of my FMLA claim filed with DHR in 2009, as provided by 42 U.S.C. 1988.

What I want the Court to do:

WHEREFORE, Plaintiff requests that the Court after a trial by jury of my claims, enter judgment against Defendants, for my actual damages, compensatory, monetary damages, general damages, and punitive or exemplary damages as are proven at trial, and for any such further legal and equitable relief as the Court deems appropriate.

## D. FOURTH CLAIM:

Date of the incident:

August 23, 2010 (Suspension-Notice of Discipline #4) Public hearing with (DHR) was cancelled of this claim in November 2011, upon my request with the Honorable Michael T. Groben, and an Administrative order' of Convenience to file this case into Federal Court with the other claims was granted DHR Case No. 10143656 (Noticed attached)

Defendant names involved in this claim:

Sgt. Pyra, Sgt. Elsenheimer, Sgt. MAllister, Lt. Wojinski, Captain Scalise, Deputy Amoia, Labor Relations/Union, Diversity Management, Superintendent Powers, FOIL

### GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

Did the following:

1. After a second Probable Cause decision was awarded by (DHR) Division of Human Rights of my filed claim on July 24, 2009 for receiving a third NOD against me for being in my unit store room; filed under claim 3, the investigator Mr. Muttalib had began his investigation in February 2010, regarding this claim. **\*One month** later after DHR's investigation; the administration Lt. Wojinski, and Captain Scalise, and some times Sgt. Elsenheimer started frequently making more rounds' on my unit bid N-1, as I had recently left the 11-7 shift to try to get some kind of relief from their harassing retaliation that had already spiraled out of control against me. I was now on 7-3 shift and on March 9, 2010, my employer started to say something about a 12 x 12 wooden library pass that has periodically and **"literally"** sit in the window of the officer's desk area for many years. Even in January and February: there were items always being put in the window by various different officers. Albion/my employer has not (Ever) once said about the library pass or items in the windows, not until DHR's investigation in February and March.

2.   I was told to remove the pass dated above, in which I did remove the pass, but after verbally telling the defendants that "I did not put the pass in the window and it was already there when I came to work this morning at 6:55am." I was ignored and the defendants both just walked off. Removal of the pass incident (is) log in my log book.

3.   On March 23, 2010 I was given a threatening formal letter of suspension from Lt. Wojinski telling me what was going to happen to me if I had a library pass in my window, but **(No Other)** officer received a letter of this magnitude even though Albion had told other officers to remove library passes also. The defendant/DOCS, understood (clearly) that the pass was not being put in the window by me, but by other shift officers, and the defendants continued to allow this to take place. Albion did not take any action toward the officers that were continuously having the past in the window. The Defendants were aware of my disability and was clear of my condition of emotional stress, as I had already past out on the 11-7 shift at work.

4.   *For Court to understand, as a reasonable person; when something has been a certain way for so many years you are not conscious of it, so when I started being told only the 1 or 2 times in March to remove the pass; the pass was removed but I had not yet got use to removing the pass or remembering that the pass was even there some days: proper protocol was not followed by higher management and all shifts should have been notified, not only Bertha Johnson of my tour. Also, proper procedure is to post a memo and this was also, not done.

5.   For the next five months I continued to come to work and there were days when the pass would (still) be in the window by the 11-7 shift; incidents were logged. It was ok, for the 11-7 officers to have the pass in the window, but I had to keep removing a library pass out of the window of my shift because I was the (Only) one being come

after.  Importantly, there is (NO) Policy about a library pass being in the window or any designated place for the pass to be.

6.  After five months with out any more issue of the library pass, Albion/DOCS got (word) in August 2010 from their attorney Mr. Herman Reinhold that my first' case involving my FMLA, had been dismissed; (Discovery). I was suspended at the (same) time that this information was linked back to Albion.  I was Suspended on August 23, 2010 for **_(ten) months for a library pass._**  *The* decision of my dismissal was dated August 19, 2010.  Defendants (all) entered my unit to come suspend me after finding out about this information.

7.  *All the other officers that were putting the pass in the window and also, that had library passes in their window continued to go to work every day and they were the one putting the pass in the window, not me.  There is so much more overwhelming acts of unlawful activity that took place with this matter to be brought forth in Court, because it's very extensive and I am trying to follow the direction of the court. But  further important fact: there **(is) video** in this case as well, and revealed at arbitration, showing how the pass sat in the window of all three shifts and also, showing the supervisors coming in to make their rounds and did not say anything about the pass being in the window.

8.  There were (so many) untruths told to an Arbitrator (another State official) being told lies, and a picture was also **staged** in December 2010, three months after' my suspension. (Discovery).  Defendants submitted the staged picture to the union attorney Mr. Schwan and also, the arbitrator with (both) of the windows all covered with paper towels, library passes, and clip boards, that they went and put in the window themselves; trying to make the arbitrator think that; the picture (was) how my window was when they entered my unit on August 23, 2010.  It was already stated in the NOD of what was in my window, not the items of the picture.

*There has not (ever) been a time that a "Lt., Sgt., and a Captain come down on a unit (All) together," as they did on the day I was suspended.


## CAUSES OF ACTION
### -Elements-

**Title VII claims-Discrimination/Retaliation,...Title VII (ADA),...Intentional Infliction of Emotional Distress,...Harassment,...Negligence(tort),...Misrepresentation,....Breach of Duty (tort) Civil Rights Act of 1964, 1990,...Disability Discrimination**


Federal basis of this claim:

9. Plaintiff hereby incorporates by reference paragraphs 1 through 8 as if fully set forth.

10. Discrimination: (Protected class, Disparate treatment) I am an African American (female) Correction Officer and as stated in the facts of my claims; disparate treatment, along with evident discrimination was the motivating factor, as to why there was not any (white-male or white-female officers) suspended, set-up, harassed, abused, given two NOD's every few months, or given a threatening memo, only (me). Also, (fact) there is video: showing the Caucasian officers with a pass in their window and was allowed to keep the pass up with out any reprisal to these officers, no suspension and these officers remained at work while I suffered a (ten) month suspension that turned my life upside down. (Employment discrimination).

11. Disparate impact: DOCS, own policy under the Bill of Rights letter (E) of union contract state (briefly) that no employee shall be intimidated or suffer any reprisal that may affect work conditions as a result of exercising their rights: Also, under Article 3 (Nondiscrimination) state that (all) employees shall be treated (Equally) as to discrimination of a persons race, color, disability.

12. Retaliation: (Intimidation and threatened) to try to break me down and dissuade me from pursuing my discrimination claim with DHR. Further, during DHR's investigation of my claim, only a month later I was served a threatening memo of suspension, but Lt. did not give any white-officers the (same).

13. Unlawful suspension: according to our Union Contract 8.4, a library pass in the window does not represent a potential danger or would severely interfere with its operations: 8.2 Discipline should be imposed only for just cause.

14. The terms and conditions of my employment were severely altered and I was unlawfully suspended for ten months. The decisions of my employer were based on retaliation due to the continuance of my filed complaints: their actions taken against me has resulted in an irreparable Harm to me and has affected my family, and I was admitted to the psychiatric facility at Medina Memorial Hospital the day I was suspended. (Intentional infliction of emotional distress) resulted in my extreme mental distress.

15. Negligence: (Duty of Care) DOCS, management at Albion have a duty to supervise. Complaints should be answered, not ignored and employers are to ensure against employment harassment. Management and Diversity Management owed a duty to me to act in conformity with a certain (Standard of Care/conduct), that is to act reasonably: my complaints for help were ignored by everyone. Showed a knowing or reckless disregard to me, my complaint, and the truth of what was happening to me. Allowed a knowing hostile work environment to go on for years. Activity Knowing and Willful intent to suspend with out just cause of following written policy by DOCS

16. Misrepresentation: False claims cited in my NOD: false statements and falsified documents were created and made days before DHR's phone investigation and only to have false information to send to DHR in response to my rebuttal: Forgery: of a staged picture (was) made and presented by defendants: (Discovery) the NOD served upon me August 23, 2010 consist of several untruths and fabrications and went back in time and added incidents, as is "noted" by the arbitrator himself:

17. The acts and omissions of Defendants were willful, wanton, premeditated, outrageous, set-up, showed disregard of Plaintiff's rights, and were performed knowingly, intentionally and with angry malice of non-stop retaliatory motives, by reason of which Plaintiff is entitled to an award of punitive damages in an amount to be proved at trial.

18. The acts, omissions, conduct, and constant behavior of Defendants caused Plaintiff to suffer damages including, but not limited to: breaking me down, mentally, physically, and emotionally, with severe, constant abuse as a human being for only fighting for my job, suffered embarrassment of being walked out the prison like a criminal over a library pass, humiliation, insult, heightened' mental distress, and emotional pain and suffering with no money, no food, and my life is forever changed.

What I want the Court to do:

WHEREFORE, Plaintiff requests that the Court, after trial by jury of her claims, enter judgment against Defendant, for my actual damages, compensatory damages, monetary, General damages, and punitive or exemplary damages as are proven at trial, and request of attorney's fees and (all) expenses from my FMLA claim pursuant to 42 U.S.C. 1988, for costs herein, and for any such further legal and equitable relief or injunctive relief, as the Court deems appropriate.

Respondent was represented by Herman Reinhold, Esq., Sr. Attorney, and Michael A. Siragusa, Esq.

By letter dated December 2, 2011, Complainant requested a dismissal on the grounds of administrative convenience. Respondent had no objection to Complainant's application.

Pursuant to Section 297.3(c) of the Human Rights Law, the complaint should be dismissed on the grounds of administrative convenience. The Complainant intends to pursue federal remedies in court, in which forum all the issues concerning the question of discrimination charged can be resolved.

ORDERED, that the case be dismissed for administrative convenience.

Dated: December 12, 2011
      Bronx, New York

Michael T. Groben
Administrative Law Judge

**E. FIFTH CLAIM:** **(Amended)**

Date of incident:

June 20, 2011    (Administrative of Convenience letter for this claim submitted)

Defendants involved in this claim:

Lt. Wojinski, Captain Scalise, Sgt, Brown, Superintendent Powers, Sgt. Goodman, Sgt, Watson, Diversity Management-Deborah Nazon, Labor Relations/Union, FOIL-Mr. Gonzalez

## GENERAL ALLEGATIONS APPLICAABLE TO ALL CLAIMS

Did the following:

1.  After I was unlawfully suspended by Albion/DOCS, for ten months on August 23, 2010. I returned back to work on June 14, 2011.  On June 20, 2011: and only **(six)** days after being back to work from a ten month suspension I was threatened by the same Lt. that was responsible for having me suspended.  (There is past problems with this Lt.).  I was standing around with many other officers waiting for line up-roll call that begins at 6:45am.  I was standing out side of the actual line up room door way and up against the wall.  The Sgt.'s began to come down and all entered into the door-way of the line up room area, as a few other officers were standing up against the wall area where I also was.  Once the Lieutenant Wojinski reached the door way he did not enter the line up room, as the Sgt.'s did, the Lt. stopped when he got across from me and turned his entire body in my direction' space, approximately about an arms length away; he then made a little jump or jerk motion forward into my space with his body, as if he was going to hit me while at the same time, said, "WHAT" at me, in his manly toned voice and with intimidation toward myself a (female) Correction Officer.  I am an African-American (female) and the Lieutenant is a Caucasian (male).

2.  I stood frozen, instantly afraid, and in shock that I was actually threatened by a Lieutenant. I did not know what to do and could not think clearly, as my morning was instantly (interrupted and changed).  I could not hear my name being called I was so out of sorts.  I was given my assigned job of the day by Sgt. Brown and went to my post. I was not normal at this point and could not focus properly on my job to cover the walk

way of the inmate movements. I was totally zoned out. And I was already under psychiatric treatment, of self harm, due to a wrongful suspension of (ten) months and my life was turned upside down. After trying to compose my self I began to call for a union rep. but no one was there at that time. I was **alone in this jail** and extremely afraid of what else the Lt. was thinking or going to do to me. I did not feel safe, especially after the horrific acts that had already been plagued against me since 2008. I immediately began to write a to-from to higher management about the events that had taken place against me, by the Lt.

3. I went to J-2 dorm crying trying to get myself together because inmates were walking around and wondering what was going on. I was explaining what had happen to the officer. I decided to call my supervisor Sgt. Goodman and told him that I was threatened at line up by Lt. Wojinski and I needed to make a call to report this incident to the police, and also, notify my family because I was scared. This was approximately 7:35am. The inmates were trying to hear my conversation, so I kept it really brief in nature. The Sgt. authorized me to go use the outside line and I logged this approval in the log book of J-2.

4. I went up to the chart office to call my son, who has served our Country' in Iraqi Freedom (War on Iraq) in 2005, 2006, 2008, and an Army Sergeant of the U.S. Marine Core. On my way up the stairs to the chart office I saw the Captain, Captain Scalise on the stair well and told her, "that I'm going up to call my family and the State policy out here to file a threat against me at line up, by Lt. Wojinski." I then showed her with my body how he jumped at me and that he said WHAT' at me. The Captain stated, and said, ok." When I arrived up to the chart office I told the chart Sgt. Sgt. Brown, the (same) thing, in the manner I had just done with the Captain, by letting him know that Lt. Wojinski threatened me at line up, and that I needed to use the phone to call the police out here to report this incident on file and notify my son what has happened. Sgt. Brown also, said, ok." He also, said, "well you cannot use that phone because it

does not work-you have to use the phone up-stairs on the third floor." I then went upstairs and called the State policy and my son.

5. Once the State police came which was immediately. I was at the front gate and the officer had already walked up to the door of Albion and I stepped out and explained to him everything. This incident is on file with Albion police also, the officer stated to me that it was a good idea that I reported the incident because things like this can get out of control and advised me that if I feel that any one was following me home; to not engage in any road rage but to call the Police .

6. I went back down to my area, and I was not the same and could not stop thinking about what had happen to me. And knowing that the Lt. would be making rounds later. I gathered myself together and began to try to focus on my job, of the walk way coverage of inmate movements.

7. Approximately around 9a.m, only an hour or so after I had filed the threat to the police. I was called to J-1 by the same supervisor Sgt. Goodman and he asked me, who gave me permission to leave the jail. I stated to him that "I told u' that I was going to report a threat against me by the Lt. and needed to do so by calling from the out-side line." I reported a threat against me by a Lt. to my supervisor Sgt. Goodman, Sgt. Brown, and Captain Scalise, but I was being told to write a to from about leaving the facility, when (all) three defendants was already told what I was going to do and it (is) logged. The Sgt. told me I had to write a to-from on who told me to leave the jail. And I also stated to the Sgt. that I did not leave the jail and was still on state property.

8. I wrote the to-from as I was told. Once I completed the to-from that I was told to write I called the Sgt. Sgt. Goodman notifying him that the to-from was complete. He was in a meeting. At 10 am, I was called to the yard for coverage. At Approximately 10:45am I was called off my post (the yard) by Sgt. Brown to report to him in the chart office and

I was sent a relief by an officer Porter. I arrived at the chart office at 10:55, and asked Sgt. Brown what was going on," but he ignored me.

9. I was taken to a conference room at 11am, and told to stay there until either he come to get me or Captain Scalise. I asked again, what was going on and requested for union representation, but Sgt. Brown walked out and closed the door. I was terrified at this point and did not know what they were about to do because the Sgt. had told me to stay' in the room. Hours had past and it was now 1pm and (NO ONE) still ever came back. I was crying, shacking, extremely scared and nervous, and loosing my mind in this room. Ultimately, I had past out on the floor and could not get up because I had been on the floor for so long. Finally, I was able to scoot my body over to the door to reach my leg over and started kicking. An officer Balling heard me kicking the door and found me on the floor and called for help. Albion/DOCS, never came back to the conference room. I was in the conference room for 3 ½ hours. The 3-11 tour had started and the Sgt. that put me in the room, he get relieved at 2:30 and had gone home knowing that a Correction Officer was still in the conference room since 11am. I was taken out by ambulance. I could here one of the Lt.'s saying, and asking, how long she been in here and who had her in here:" My son was furious and continued to call the facility, as well as my sister, and my niece. No one would speak to them and was giving them the run around. I was not ever afforded union counsel. And there was never any investigation taken of my report that I was threatened.

10. I have tried through every chain of command there is to seek help. Diversity Management, the Union, The Superintendent, the Captain, the Deputy, No one has helped me against the horrific abuse I have endured with all of my claims. The actions by my employer/DOCS were all ignored and these acts were allowed to continue for years.

## CAUSES OF ACTION
### -Elements-

**Retaliation/Discrimination-Title VII,...Title VII (ADA),...Civil Rights Act of 1964, 1990,...Intentional Infliction of Emotional Distress,...Negligence,...Battery(tort),...Assault(tort),...Hostile Work Environment,...Breach of Contract(tort),...Misrepresentation**

Federal basis of this claim:

11.   Plaintiff hereby incorporates by reference paragraphs 1 through 10 as if fully set forth.

12.   On the filed submissions of my facts noted under Allegation there is (Discovery) on all claims of the facts presented.  Albion/DOCS have tried everything they could to dissuade me from continuing to follow through on my claims or participate in the claims against them and when I continued to expose their activity: their behavior became more and more Abusive, Irate, and Out of Control. The specific facts does have (merit) and does support my claims, which I'm entitled to relief and should be granted.

13.   The Lt.'s conduct against a woman; was violent, severe, and pervasive, and caused extreme emotional distress. (Intentional Infliction of Distress).  And was Out of control conduct in a work place and (did) create a (Hostile Work Environment) but there was not any reprisal taken against the Lt.  He was able to (remain) at work: and anything was (ever) still done about his actions against me. (Negligence) Lack of duty to care, Standard of care, Duty to rescue, (to not allow) work place abusive behavior, violence, discrimination, retaliation, and a Hostile work environment.  All of the abusive acts that were taking place against me were reported to higher management which continued to provide inadequate response.  No investigation was taken upon me reporting this threat to Sgt. Brown, Sgt. Goodman, and Captain Scalise.

14.   Assault- Battery: (tort) an un-consented harmful and offensive contact. (trespass) Action against me was made with appropriate level of **intent'** and negligence,' the Lt.

(clearly) understood what he was doing to me and (did) make contact with me, by jumping his body at me that was Harmful and Offensive in my space area.

15.   The Lt.'s actions, along with all the other abusive conduct taken by the other defendants, as well (is) also, harmful and pervasive and has caused other reasonable officers to become fearful and have been dissuaded from making or supporting a charge of discrimination.

16.   Retaliation/Discrimination:  Out of hundreds of other officers at the Albion Correctional facility, there is no other officer that has suffered or endured the constant' harassment, set-up, abusive' activity that I have or served total of Five Notice of Discipline since my filed complaints with Albion's Superintendent, U.S. Department of Labor, Diversity Management, and DHR.  Disparate treatment:  I was being once Again: Retaliated against and also, Punished for standing up against Albion/DOCS, and not being afraid to fight back and continuing to (expose) their unlawful acts of what they were doing to me:  if I would have jumped at the Lt. and said, what" to him I would have literally been walked out in hand cuffs.  Why' the same does not apply to him; is (he) better than me because he is white' and I'm black', or because he is a Lt. and I'm an Officer, and so it's ok, for him to threatened me and nothing happens.

17.   My rights were violated and I was denied my right to union counsel, Adverse Employment Action: the terms and conditions of my employment was interfered with, as I was put in a conference room for 3 ½ hours for no reason at all and I was not ever returned back to my job-duties.  I suffered harm and injury as a result and had to be taken out by ambulance.  No Union official was aware that defendants had an Officer in the conference room and was (told) to stay there.

18.   The acts and omissions of Defendant were willful, wanton, malicious, violent, outrageous, showed disregard of Plaintiff's rights, and were performed knowingly,

intentionally, and maliciously, by reason of which Plaintiff is entitled to an award of punitive damages in an amount to be proved at trial.

19.   The acts, omissions, conduct, and behavior of Defendant caused Plaintiff to suffer damages including, but not limited to: inconvenience, insult, embarrassment, humiliation, further damage to my quality of life, and my dignity of having to just stand there and be assaulted and could not do anything, mental distress, and further and again' pain and suffering.

What I want the Court to do:

WHEREFORE, Plaintiff requests that the Court, after a trial by jury of my claims, enter judgment against Defendant, for her actual damages, compensatory, monetary, and punitive or exemplary damages as are proven at trial, and herein, for any such further legal and injunctive, or equitable relief as the Court deems appropriate.

## 6. SUMMARY OF RELIEF SOUGHT

*Summarize the relief requested by you in each statement of claim above.*

" Please follow (add on) additions of Answer. Relief (is) entitled and so Stated in each Statement of my Chain.

Do you want a **jury trial**?  Yes ✓  No____

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on ___1|18|2012___
                    (date)

**NOTE:**  *Each plaintiff must sign this complaint and must also sign all subsequent papers filed with the Court.*

Signature(s) of Plaintiff(s)

5

Revised 05/01 WDNY

**AFFIRMATION OF SERVICE**

(If you are *not* having your signature notarized, use this form)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Beetha A. Johnson

            Plaintiff(s),                                    AFFIRMATION OF SERVICE

        v.                                              11 -CV- 0079

NYS Department of Corrections
& Community Services (DOCS)
            Defendant(s).

I, *(print your name)* Bertha Johnson, served a copy of the attached papers
*(state the name of your papers)* _____

_____

_____

_____ upon all other parties in this case

by mailing ___N/A___ by hand-delivering ___✓___ *(check the method you used)*

these documents to the following persons *(list the names and addresses of the people you served)* _____

David J. Sleight
New York State, Office of Attorney General
Main Place Tower, Suite 300A,
350 Main Street
Buffalo, NY 14202

on *(date service was made)* _____

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information and belief.

Executed on __1/18/12__                    Bertha John
                *(date)*                              *(your signature)*